| | |
|---|---|
| LINDA OBEGENSKI, ADMINISTRATRIX OF THE EST. OF BRUCE OBEGENSKI | UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT |
| VS. | |
| SUN LIFE FINANCIAL, SUN INSURANCE COMPANY OF CANADA | SEPTEMBER 18, 2020 |

## COMPLAINT

I. The Parties to This Complaint

Linda Obegenski, Administratrix of the Estate of Bruce Obegenski, deceased

245 Allen Road

Torrington, CT 06790

Telephone Number 860 307 0973

Email address lobegenski@yahoo.com

2. The Defendant

Sun Life Assurance Company of Canada

One Sun Life Executive Park

Wellesley Hills, MA 02481-5699

Telephone Number 1-800 247-6875

Email address www.sunlife.usa.com

II. Basis for jurisdiction

This is an action pursuant to 29 U.S.C. Sec. 1132(a)(1)(B) to enforce rights under the terms of two employment based policies of life insurance. Venue exists in this judicial district pursuant to sec. 502(a)(1)(B).

III. Statement of Claim

1. The Plaintiff is the Administratrix of the Estate of Bruce Obegenski, who was appointed by the Probate Court for the District of Litchfield on March 2, 2020. Bruce Obegenski was an employee of U.S.A. Hauling and Recycling, Inc. eligible

for the life insurance benefits through Sun Life Insurance Company, hereinafter described.

2. On January 1, 2019 the Defendant Sun Life Insurance Company of Canada issued to U.S.A. Hauling and Recycling, Inc. two policies of life insurance pursuant to which certain benefits were provided for Bruce Obegenski, as one of U.S.A.'s employees as follows:

   Policy No. 923042-001-death benefit $150,000, and

   Policy No. 923032-002-death benefit $15,000

3. One of the benefits described and provided to Bruce Obegenski under said policies was that said life insurance could be converted to an individual policy upon the employee's termination of employment.

4. The group life insurance provision as to the $150,000 policy required the employee to pay premiums therefor during the period of his employment, and both policies included the right to convert his insurance to an individual policy by completing an application for "portable insurance" and sending it to the Defendant with payment of the first premium within 31 days of his "terminating his employment".

5. The said Bruce Obegenski regularly paid the premiums on the $150,000 policy which provided that his son, Matthew would be his life insurance beneficiary upon his demise.

6. On or about April 29, 2019, Bruce Obegenski became seriously ill and began a series of hospitalizations culminating in his death on January 15, 2020. During that period Bruce was unable to manage his affairs and the Plaintiff, as Bruce's

ex-wife, was attempting to assist him in doing so, including, commencing in October, 2019, implementing his desire to convert his life insurance policies with the Defendant into individual policies.

7. On October 1, 2019 Bruce was sent a letter by his employer which read "On September 19, 2019 we contacted you on your intent to return to work. We requested you provide us with your intent by September 24, 2019. We did not receive a response from you. The letter stated that if you did not respond by September 24, 2019, we would accept your voluntary resignation." Bruce was too ill to respond and never submitted a "voluntary resignation" or otherwise "terminated his employment" before his death, because he did not believe his illness was terminal.

8. On or about October 10, 2019, while the insured was a patient at Yale New Haven Hospital, the Plaintiff received from Jennifer Robinson at HUB International a packet of information dated October 2, 2019 concerning Bruce's rights to continue his medical insurance and a separate packet containing an application to convert his group life insurance to individual policies.

9. The rights to convert his life insurance were contained in a "Portability Kit" which stated, "If you want to continue your coverage, you must notify Sun Life Financial within 31 days or any extended notice period of the termination of your current employment".  At this time Bruce was unable to conduct business.  When Linda called him at the hospital, he told her that he wanted her to file the conversion forms to convert the policies.

10. The plaintiff telephoned Sun Life on October 12th for assistance, and spoke to a representative who orally advised the Plaintiff that Bruce had until October 31 to file a conversion application, based on her assumption that Bruce's employment had ended on October 1, 2019. The conversation was complicated by the Sun representative's discussion of "waiver of premium" benefits for which Bruce did not qualify and for which he had not applied. The Plaintiff partially filled out one conversion form for the $150,000 policy, which she signed during the phone conversation, dating Bruce's signature 10/1/19. She did not enter a premium amount on the form. The Plaintiff then on or about October 13th mailed the signed conversion form back to Jennifer Robinson at HUB International, who shortly thereafter returned it to the Plaintiff with a note stating, "I left you a voicemail stating that this Sunlife form is to convert the life insurance policy that USA paid for Bruce into his own name if he wants to pay for it. He has to call Sunlife to see how much it would be."

11. Sun Life never sent Linda Obegenski any conversion applications, quotes of life insurance rates or other explanatory paperwork before or after the October 12th phone call to explain how to convert the two life insurance policies. There was no follow up communication from Sun Life to Bruce or Linda Obegenski after the October 12 phone call except the following letter.

12. On October 21, 2019, Sun Life's benefit analyst Karen Koch wrote a letter to Bruce Obegenski referencing:

"Named Insured:            Bruce Obegenski
Policyholder Name          USA Hauling and Recycling, Inc.
Group Policy Number        923042-Group Life Insurance Benefit

And stating:

"We have completed our review of your Group life Insurance Waiver of premium claim. We regret to inform you that you do not qualify for extension of your coverage under the Group Policy referenced above." On page 2 of the letter in bullet point were the words "Adverse Decision". The letter did not explain that the ruling on the Waiver of Premium (for which the Plaintiff had not applied) was fully separate from the right to convert the coverage. This letter contained no applications for conversion coverage or information regarding rates. The letter was flatly misleading because Bruce DID qualify for extension of coverage under conversion; he just would have had to pay for it under the conversion policy.

13. The Plaintiff took the letter to Yale New Haven Hospital and showed it to Bruce telling him that the request to convert his life insurance had been denied, to which Bruce replied "Why was I even paying this"? The Plaintiff received this letter approximately four days after sending the conversion paperwork to Jennifer Robinson and before she received the reply from her.

14. As a result of this communication and the lack of any conversion forms or information, both the Plaintiff and Bruce Obegenski understood that his group coverage had been terminated and the that the right to convert it to an individual policy had been denied, as a result of which they never completed and sent the conversion forms to the Defendant.

15. The conversion privilege if exercised would have allowed Bruce Obegenski to convert his group coverage to individual policies with a death benefits of $150,000 and $15,000.

16. The October 21st communication from the Defendant's representative misled Plaintiff and Plaintiff's decedent into believing that since his group coverage was no longer in effect, there was no group coverage for him to convert into individual life insurance policies.

17. As a result of the above events the rights of the said Bruce Obegenski under 29 U.S.C. 1022 have been violated.

18. The Plaintiff has exhausted her rights under the Plan appeal procedures.

IV. Relief

The Plaintiff respectfully requests that the Court grant her the following relief:

1. The right to posthumously convert the life insurance policies on behalf of Bruce Obegenski to $150,000 and $15,000.

2. Attorney's fees

3. Prejudgment interest

Dated at Torrington, Connecticut this 18th day of September, 2020.

Respectfully submitted,

_____
Charles F. Brower, Attorney at Law
Attorney for Plaintiff
Federal Bar No. 10611
chuck@brower-law.com
445 Prospect St
Torrington CT 06790
(860) 482-8106; fax 860 482-4701