**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LINDA OBEGENSKI, as Administratrix of the Estate of Bruce Obegenski,<br><br>Plaintiff,<br><br>v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>Defendant. | Civil No. 3:20-cv-1408 (AWT) |

**RULING ON CROSS-MOTIONS FOR JUDGMENT**

Plaintiff Linda Obegenski and defendant Sun Life Assurance Company of Canada ("Sun Life") have each moved for judgment on the administrative record. For the reasons set forth below, the court is granting the defendant's motion.

**I. FACTUAL BACKGROUND**

Until late 2019, Bruce Obegenski was employed by USA Hauling and Recycling, Inc. ("USA Hauling"), where he participated in an employee welfare benefit plan established by USA Hauling. Sun Life issued group insurance policies to USA Hauling to help fund the company's employee welfare benefit plan. Sun Life served as the claims administrator for these plans and was responsible for making benefit determinations in accordance with the plans. The policies gave recently terminated employees the right to apply for conversion from group life

insurance coverage to an individual life insurance policy without first undergoing a medical exam. Former employees were eligible for conversion only if they applied within thirty-one days of the termination of employment and paid the applicable premiums.

As an employee of USA Hauling, Obegenski was covered by these policies when he was hospitalized on and off for extended periods of time beginning in April 2019 and continuing until the termination of his employment on or about October 1, 2019. Obegenski was eligible to apply for conversion within 31 days of the termination of his employment. He was ineligible for the separate waiver of premium benefit due to his age at his date of disability.

In early October 2019, Obegenski and the plaintiff received conversion forms which were sent on behalf of his former employer. On October 16, 2019, the plaintiff called the defendant to discuss conversion and the amount of the premiums that would be payable on a converted Sun Life policy. The Sun Life Representative, Dustin Prince, mentioned that they should determine whether Obegenski was eligible for a waiver of premium. See Ex. A., Def.'s Mem. (ECF No. 23-1) at 1 ("So one thing that might be done . . . we might be able to run what's called a waiver of premium. . . . [W]aiver of premium is where . . . we take that same coverage and can hold on to it here and

we waive the fee for it."); see also Ex. B., Def.'s Mot. (ECF No. 26). Prince then stated, "So that might be, that way be looked into as well," and then asked for Obegenski's date of birth. Ex. A., Def.'s Mem. at 1. On October 21, 2019, the defendant sent Obegenski a letter stating that it had denied his "Group Life Insurance Waiver of Premium claim." SUN001397. The letter states: "You ceased to be actively at work due to illness on May 25, 2019. As you were over age 60 on that date, you do not meet the Group Policy requirements for this benefit." Id.

Obegenski died on January 15, 2020. Neither Obegenski nor the plaintiff had ever submitted the forms required to convert to an individual policy, and neither had paid the policy premiums the plaintiff discussed with the Sun Life representative on the October 16, 2019 call. After Obegenski died, the plaintiff requested that Sun Life convert Obegenski's coverage to an individual life policy retroactively and offered to pay the monthly premiums that had not been paid for November 2019 to January 2020. Sun Life denied the plaintiff's request. On April 22, 2020, the plaintiff administratively appealed that determination. Sun Life upheld its determination on June 3, 2020. The plaintiff submitted an additional appeal on July 30, 2020. On August 10, 2020, Sun Life once again upheld its determination.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there


are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See

Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of

establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted).

**III. DISCUSSION**

The plaintiff brings her claim under Section 502(a)(1)(B) of ERISA, which provides in relevant part that "[a] civil action may be brought . . . to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Section 502(a)(1)(B) of ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). Under ERISA, plaintiffs are "required to . . . establish that they were entitled to that benefit pursuant to the terms of the Contract or applicable federal law." Juliano v. Health Maintenance Org. of New Jersey, Inc., 221 F.3d 279, 287-88 (2d Cir. 2000). "A denial of benefits under ERISA is reviewed

by the District Court 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Muller v. First Unum Life Ins. Co., 341 F.3d 119, 123-24 (2d Cir. 2003) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). "[I]f the plan does grant such discretionary authority to its administrator, a reviewing court should defer to that authority, and evaluate the plan administrator's decisions under an 'arbitrary and capricious' standard." Mario v. P & C Food Mkts., 313 F.3d 758, 763 (2d Cir. 2002) (citing Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)).

Under the arbitrary and capricious standard, a court may "overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence, or erroneous as a matter of law." Pagan, 52 F.3d at 442. "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 138 (2d Cir. 2010) (internal quotation marks omitted).

Here, the defendant's denial of benefits is subject to review under the arbitrary and capricious standard. The group insurance policies issued to USA Hauling state:

> Sun Life has discretionary authority to make all final determinations regarding claims for benefits under the Policy. This discretionary authority includes, but is not limited to, the right to determine eligibility for benefits and the amount of any benefits due, and to construe the terms of the policy.
>
> Any decision made by us in the exercise of this authority, including review of denials of benefit, is conclusive and binding on all parties. Any court reviewing such a decision shall uphold it unless the claimant proves that it was arbitrary and capricious.

SUN000046 (disability insurance), SUN000080 (employee basic life insurance), SUN000126 (voluntary life insurance). Under this standard of review, the court cannot "substitute its judgment for that of the Plan Administrator," Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005), and "may not deem a final benefits determination to be arbitrary and capricious merely because the record contains evidence supporting an alternative determination," Mayer v. Ringler Assocs. Inc., 9 F.4th 78, 89 (2d Cir. 2021).

Under ERISA, "judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 67 (2d Cir. 1997). Courts generally "have declined to consider extra-record evidence that merely challenges the merits of the fiduciary's decision to deny benefits, but admitted extra-record evidence when they have concerns about the fairness and adequacy of the

procedures used to develop the record." Meidl v. Aetna, Inc., 346 F.Supp.3d 223, 235 (D. Conn. 2018). The plaintiff has adopted Sun Life's Statement of Undisputed Facts ("Stmt. of Facts") (ECF No. 24) in its entirety. See Pl.'s Statement of Undisputed Facts (ECF No. 27) at 1. In the absence of "concerns about the fairness and adequacy of the procedures used to develop the record," there is no need to consider extra-record evidence. Meidl, 346 F.Supp.3d at 235. Accordingly, the court limits its review to the administrative record filed by Sun Life. See Ex. A, Def.'s Mot. (ECF Nos. 25-1, 25-2).

The record in front of the claims administrator shows that the defendant's denial of benefits was supported by substantial evidence--that is, by evidence "adequate to support the conclusion reached by the administrator"--and that it was reasonable and not erroneous as a matter of law. Durakovic, 609 F.3d at 138.

Obegenski participated in a plan established and maintained by USA Hauling, his former employer. Sun Life issued life insurance policies to fund, in part, this plan, and Sun Life acted as the claim administrator for the life insurance policies. Once Obegenski's employment was terminated, the terms of the policy required Obegenski to apply for conversion within thirty-one days, provided that he had an additional fifteen days if his employer had not supplied him with notice of his

conversion rights. Obegenski received notice of his conversion rights from his employer, so he was required to apply for conversion within thirty-one days of the termination of his employment on or around October 1, 2019. Obegenski died on January 15, 2020. Neither Obegenski nor the plaintiff submitted an application for conversion of Obegenski's group life insurance policy to an individual life insurance policy before Obegenski's death. Nor did either Obegenski or the plaintiff attempt to pay policy premiums between November 2019 and January 2020, as was required for the policy to be in force at the time of Obegenski's death.

The statements by the plaintiff during the October 16, 2019 telephone conversation reflect that the Obegenskis were not committed to applying for conversion because of their concern about the amounts of the premiums quoted to the plaintiff. The last four substantive statements by the plaintiff during that discussion were as follows:

> So he would have to um decide what, because when I figured it out, I figured it out to like $279 a month is what I figured it out, um. . . .
>
> Okay so I would have to talk to him and see what he wants to do and if he decides not to do it, um, then all these years that they were paying in to it and he was paying in to it, it pays nothing out. . . .
>
> Okay. So the 30th we have until. . . .

> Okay, okay. Well you've been very informative and we have no later than October 30th to decide. Okay. So that helps me out there. Alright.

Ex. A., Def.'s Mem. at 4-5.

Viewed in the light most favorable to the plaintiff, there is a rational connection between these facts and the conclusion by the defendant that Obegenski did not comply with the plan's requirement that he timely apply for conversion. See Sisavang Danouvong v. Life Ins. Co. of N. Am., 659 F.Supp.2d 318, 324 (D. Conn. 2009) ("The [plan administrator] must articulate a rational connection between the facts found and the choice made.").

The plaintiff maintains that the defendant "committed an arbitrary and capricious abuse of discretion" because it "totally failed to consider its own unilateral actions and use of confusing language by its representatives in the phone call, in the October 21st letter and in the appeal decision with respect to the waiver of premium." Pl.'s Mem. (ECF No. 21-1) at 6-7. With respect to the October 16, 2019 phone call, the plaintiff asserts that "the Defendant misled Linda Obegenski with respect to filing the conversion claim by injecting the inapplicable waiver of premium issue into the communications." Id. at 7. The plaintiff argues that "many of Prince's statements in the call are not clear." Pl.'s Reply (ECF No. 28) at 1. She asserts that "[a]t one point he says that both conversion and

waiver of premium could be denied due to Bruce’s age.” Id. With respect to the October 21, 2019 letter, the plaintiff asserts that the defendant “proceed[ed] to use [the inapplicable waiver of premium issue] to confuse the Obegenskis and preclude them from filing for conversion by writing the October 21st letter.” Pl.’s Mem. at 7. The plaintiff maintains that “[s]ince Mrs. Obegenski had made no claim for waiver of premium, the letter looked to her very much like a letter written in ‘insuranceese’ denying the claim for conversion. And that is how she took it.” Pl.’s Reply at 2. The plaintiff’s position is that “[t]he combined effect of the October 16 phone conversation and the October 21 letter was to make the Obegenskis believe that they had lost their rights with respect to their claiming conversion of Bruce’s $150,000 life insurance policy.” Pl.’s Mem. at 7.

However, Sun Life did consider the language used by its representative during the October 16, 2019 telephone conversation and its actions in sending the October 21, 2019 letter. In the June 3, 2020 letter to the plaintiff’s attorney, Sun Life explained that “[a]fter a review of available documentation, including a telephone call recording, it was determined a timely application was not submitted and Sun Life denied the request to posthumously convert the Policy.” SUN001503. The June 3, 2020 letter also cited to the telephone

conversation on October 16, 2019.[1] It accurately recited that the conversation included quotes for varying amounts of coverage and that the plaintiff "expressed she wasn't sure if [Mr. Obegenski] would want to move forward as they have other coverage with John Hancock." Id. The record shows that Sun Life considered the portion of the October 16 conversation emphasized by the plaintiff but did so in the context of the entirety of the discussion.

Sun Life directly addressed the plaintiff's contention that the Obegenskis were confused and misled by the October 21, 2019 letter:

> On April 23, 2020, we received an appeal review request from Mr. Obegenski's estate via your office. The ostensible basis for the appeal is a contention that the Obegenskis were confused about the right to convert based on the October 21, 2019 letter that denied the LWOP. In the appeal letter, it is acknowledged that Mr. Obegenski did not submit a timely written application for conversion as expressly required by the Policy.
>
> In part, the appeal is based on conjecture concerning Mr. Obegenski's understanding and/or confusion concerning his right to convert the Policy. No direct evidence has been submitted on appeal concerning Mr. Obegenski's state of mind or understanding of the Policy terms. Based on the available information, it can be surmised that Mr. Obegenski chose not to convert the policy because he had other coverage as indicated by Ms. Obegenski.

---

[1] The letter erroneously refers to a "telephone discussion on October 12, 2019." Id.

Id.

With respect to the plaintiff's contention that the LWOP denial determination letter confused the Obegenskis, Sun Life concluded:

> Since it was explained to Ms. Obegenski that Waiver of Premium was separate from Conversion prior to receipt of the October 21, 2019 letter, she should have understood the letter was not a denial of Conversion. Moreover, Ms. Obegenski was obviously aware an application for Conversion had not yet been submitted since she was advised just a few days earlier during the telephone call with Sun Life that Mr. Obegenski was eligible for Conversion and the application must be submitted by October 30, 2019. . . .
>
> Moreover, the LWOP denial letter also clearly states "you may have the option to convert your insurance to an individual policy" and then states "Please check with your employer for complete details on the continuation of your life insurance coverage." Nothing in the LWOP denial letter indicated Mr. Obegenski was not eligible for continuation or conversion of the Policy. To the contrary, the letter clearly advises Mr. Obegenski he may have the option to convert and to contact his employer for details.

SUN001504.

Thus, Sun Life gave proper consideration to its action in sending the LWOP denial letter and to the plaintiff's contention that it confused the Obegenskis by making them believe that they had lost their conversion rights. Based on the record before the claims administrator, it concluded that not only had Obegenski been sent the conversion forms on October 2, 2019, but also that the plaintiff and Obegenski were not misled about his conversion

rights by either the October 16, 2019 call or the October 21, 2019 letter. This conclusion was more than supported by substantial evidence. It was based on the fact that Obegenski received conversion forms from his employer, on the statements by the plaintiff during the October 16, 2019 conversation, on the statements by Sun Life's representative during that conversation, on the language of the LWOP denial letter, and on the absence of any direct evidence concerning Obegenski's state of mind or understanding of the policy terms.

The plaintiff also argues that the defendant misled the Obegenskis during the October 16, 2019 call and in the October 21, 2019 letter and thereby prevented them from applying for conversion. See Pl.'s Mem. at 7. Such a claim sounds in breach of fiduciary duty in violation of Section 502(a)(3) of ERISA, not Section 502(a)(1)(B). The plaintiff cites to three cases for the proposition that "Plan fiduciaries [must] provide 'complete and accurate' information to plan members and beneficiaries about their benefits." Pl.'s Mem. at 7. All three cases addressed this principle in the context of claims for breach of fiduciary duty. See Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 9 (2d Cir. 1997) (holding "Kodak breached its fiduciary duty to provide Becker with complete and accurate information about her retirement options"); In re DeRogatis, 904 F.3d 174, 190 (2d Cir. 2018) (referring to the standard "to state a claim

under section 502(a)(3) for fiduciary breach based on a defendant's alleged failure to provide complete and accurate information about plan benefits"); Commc'ns Workers of Am., Dist. One, AFL-CIO v. NYNEX Corp., 898 F.2d 887, 892 (2d Cir. 1990) (describing as "misleading" various notices sent by defendant NYNEX). See also Pl.'s Br., Commc'ns Workers of Am., 1989 WL 1137611 (2d Cir. Nov. 22, 1989), at *21-26 ("Since this notice contained misleading information . . . the notice itself constitutes a breach of NYNEX Corp.'s fiduciary duty as the MEP Plan Administrator."). But the plaintiff did not bring a claim for breach of fiduciary duty. See Def.'s Mem. at 34 (noting the plaintiff has not "asserted any claim for fiduciary breach under 29 U.S.C. § 1132(a)(3)").

## IV. CONCLUSION

Accordingly, the Plaintiff's Motion for Judgment on the Record (ECF No. 21) is hereby DENIED, and Sun Life's Motion for Judgment on the Administrative Record (ECF No. 22) is hereby GRANTED. The Clerk shall enter judgment for the defendant and close this case.

It is so ordered.

Dated this 22nd day of July 2022, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge